NYCTL 1997-1 Trust v Stell (2020 NY Slip Op 02802)





NYCTL 1997-1 Trust v Stell


2020 NY Slip Op 02802


Decided on May 13, 2020


Appellate Division, Second Department


Scheinkman, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
JOHN M. LEVENTHAL
JOSEPH J. MALTESE, JJ.


2018-14500
 (Index No. 13104/98)

[*1]NYCTL 1997-1 Trust, et al., plaintiffs, 
v
Igal Stell, appellant, et al., respondents, et al., defendant.



APPEAL by the defendant Igal Stell, in an action to foreclose a tax lien, from an order of the Supreme Court (Alan C. Marin, J.), dated October 25, 2018, and entered in Richmond County. The order, insofar as appealed from, denied that defendant's motion to confirm a referee's report and direct the distribution of surplus funds to him, and directed the New York State Comptroller to distribute the surplus funds to the defendant City of New York Department of Housing Preservation and Development.



Eric Nelson, Staten Island, NY, for appellant.
James E. Johnson, Corporation Counsel, New York, NY (Scott Shorr and Nwamaka Ejebe of counsel), for respondent City of New York Department of Housing Preservation and Development.



SCHEINKMAN, P.J.


OPINION & ORDER
The issue posed on this appeal is who is entitled to the surplus money generated by a tax lien sale: the holder of the first mortgage or the holder of the equitable right of redemption. We conclude that, on the facts presented, the funds belong to the first mortgagee. Elucidation and clarification of the governing case law is required.
Factual and Procedural Background
The defendant Igal Stell owned real property located at 106 Victory Boulevard, Staten Island. In April 2000, the real property was sold at public auction in order to satisfy a judgment entered in a tax lien foreclosure of the property. The sale resulted in a surplus of $42,986. The money was initially deposited with the Richmond County Clerk and later with the New York State Comptroller. Both Stell and the defendant City of New York Department of Housing Preservation and Development (hereinafter HPD) interposed claims to the surplus money.
HPD held a first mortgage on the property, granted in 1988 and securing a 15-year loan in the sum of $56,250. Stell defaulted on the mortgage in April 1997, and the mortgage matured by its own terms in 2003. HPD claimed that, as of August 31, 2017, Stell owed it $148,096.30, and it sought to use the surplus funds to partially satisfy Stell's debt. Stell's claim was predicated upon his status as the holder of the equitable right of redemption. He maintained that HPD's claims were time-barred.
In an amended order dated August 3, 2017, the Supreme Court, Richmond County (Philip G. Minardo, J.), confirmed a referee's report of the public auction sale and appointed Thomas J. Hall (hereinafter the referee) as referee to ascertain and report the amount due to HPD or any other person who had a lien on the surplus monies and to ascertain the priority of the liens thereon.
The Referee's Report
The referee issued a report dated January 2, 2018, which identified Stell and HPD as being the only claimants to the surplus funds. The referee made findings of fact, none of which were [*2]disputed by Stell or HPD. Stell was the owner of the equity of redemption of the real property. HPD asserted its claim to the surplus by virtue of a purchase money mortgage dated March 1, 1988, between Stell as mortgagor and HPD as mortgagee, in the original principal sum of $56,250, which was secured by the premises and recorded on April 8, 1988. The mortgage had been in default since April 1, 1997, and HPD asserted that the sum of $148,096.30 was due and owing on the mortgage as of August 31, 2017.
The referee's report set forth the parties' positions. HPD contended that it had a valid mortgage lien on the premises, which was second in priority to the foreclosed-upon tax lien, and that the amount due to it exceeded the surplus, such that the surplus should be distributed entirely to it. Stell argued that HPD's claim was time-barred by the six-year statute of limitations, since the mortgage, by its terms, matured in 2003 and no payments were made at any time after the maturity date. HPD countered that the only relevant issue was whether its claim was valid at the time of the foreclosure sale of the tax lien, which took place in 2000, within the six-year statute of limitations.
The referee noted that while there was no evidence that the March 1, 1988, mortgage at issue was ever accelerated, by its terms, it was to be paid in full on the 15th anniversary of the date of the mortgage, or March 1, 2003. The referee agreed with HPD that the statute of limitations had not yet run at the time of the foreclosure auction or at the time when the deed was delivered, both of which occurred in 2000. The referee, therefore, concluded that HPD's lien attached to the surplus. However, the referee also reported that the statute of limitations had continued to run after HPD's lien attached to the surplus and had expired before HPD sought to enforce the lien in a surplus money proceeding. The referee thus concluded that HPD's claim to the surplus was time-barred, and that Stell, as the only other claimant of the surplus funds, was entitled to those funds as the owner of the equity of redemption.
Order on Appeal
By notice of motion dated August 14, 2018, Stell moved to confirm the referee's report and direct the distribution of surplus funds to him. HPD opposed the motion, arguing that the statute of limitations was not a bar against a lien on surplus funds if the mortgage lien had been extinguished in the foreclosure sale and was valid at the time of that sale. HPD asserted that liens of subordinate lienors are extinguished upon a foreclosure sale and attach to any surplus, such that the statute of limitations related to a foreclosed lien is no longer relevant. HPD asserted that it was a defendant in the foreclosure action, and its lien was extinguished upon the foreclosure of the tax lien, and, therefore, it did not have to take further action to enforce its lien on the surplus.
In an order dated October 25, 2018, the Supreme Court (Alan C. Marin, J.) denied Stell's motion, inter alia, to confirm the referee's report. The court held that HPD's claim to the surplus was not barred by the statute of limitations, and directed the New York State Comptroller to distribute the surplus funds to HPD based on its priority mortgage lien, which attached to the surplus at the time of the foreclosure sale and was superior to Stell's interest in the surplus. Stell appeals.
Analysis
The referee, in concluding that HPD's claim to the surplus funds was time-barred, relied upon two cases: Allerwan Co. v Hermann (262 NY 625) and Greenpoint Sav. Bank v Kijik (297 AD2d 359).
In Allerwan, the Court of Appeals reversed this Court's determinations that a second mortgagee's claim to surplus money under its mortgage was valid and superior to the claim of the heirs of the owner of redemption, and that "the filing by the [second mortgagee] of its claim to the surplus moneys constituted a commencement of the proceeding and preserved the lien of its mortgage thereon" (Allerwan Co. v Hermann, 237 App Div 900, 900, revd 262 NY 625). The Court of Appeals reversed this Court "upon the ground that the filing of the notice of claim to the surplus money by [the second mortgagee] was not the commencement of an action or special proceeding on the bond or mortgage in question and that, therefore, the claim of the [second mortgagee] was barred" by the then-applicable 20-year statute of limitations to foreclose a mortgage (Allerwan Co. v Hermann, 262 NY at 626).
In Greenpoint, this Court, in reliance upon Allerwan, held that the claim of a second mortgagee, who had been named as a defendant in the first mortgagee's action to foreclose the mortgage, to surplus money was time-barred, because it moved to obtain the surplus funds more than six years after the mortgagor defaulted on the second mortgage.
On this appeal, Stell argues that the referee properly relied upon these two cases, and [*3]that the order denying his motion, inter alia, to confirm the referee's report, which found that HPD's claim to the surplus was made more than six years after Stell defaulted on the HPD mortgage and was therefore time-barred, should be reversed.
HPD counters that its lien was terminated upon foreclosure and attached to the surplus upon the foreclosure sale, and that since it was a defendant to the foreclosure action which resulted in the surplus, it was not required to commence a separate action within the six-year statute of limitations. HPD relies upon Bennardo v Del Monte Caterers, Inc. (27 AD3d 503, 505), in which this Court held that a second mortgagee's claim to surplus funds was not barred by the six-year statute of limitations, where the second mortgagee's predecessor in interest had participated in the action to foreclose the first mortgage by answering the complaint and asserting counterclaims, such that all parties were on notice of his claim as second mortgagee. Noting that once the second mortgagee's lien on the property was extinguished due to the foreclosure and sale, it filed its notice of claim to the surplus funds, this Court found that Allerwan Co. v Hermann (262 NY 625) and Greenpoint Sav. Bank v Kijik (297 AD2d 359) were not inconsistent with the determination. While the second mortgagee in Bennardo commenced a separate foreclosure action, which was withdrawn after the sale incident to the foreclosure of the first mortgage, in the present case, HPD contends that it would make no sense to hold that it had to have commenced an action to foreclose a mortgage which had been extinguished upon the foreclosure of the tax lien.
" Surplus money . . . stands in the place of the land for all purposes of distribution among persons having vested interests or liens upon the land"'(Shankman v Horoshko, 291 AD2d 441, 442, quoting Roosevelt Sav. Bank v Goldberg, 118 Misc 2d 220, 221 [Sup Ct, Nassau County]; see Chase Manhattan Mtge. Corp. v Hall, 18 AD3d 413, 414; Freemont Inv. & Loan v Kinlaw, 15 AD3d 345). "Furthermore, [o]nly those judgments and liens which existed upon the property at the time of the . . . sale constitute liens against the surplus moneys'" (Mortgage Elec. Registration Sys., Inc. v Levin, 63 AD3d 890, 891, quoting Pindus v Newmat Leasing Corp., 71 AD2d 948, 949). The liens existing on the land at the time of the foreclosure are considered to have been transferred to the surplus funds (see Nutt v Cuming, 155 NY 309, 312; Sadow v Poskin Realty Corp., 63 Misc 2d 499, 503 [Sup Ct, Queens County]). If at the time of the sale no valid lien exists, then there is nothing to be transferred to the surplus funds (see Nutt v Cuming, 155 NY at 312).
"[S]urplus money proceedings . . . are not collateral to the foreclosure, but are in the action itself. And the rights of lienors subsequent to the mortgage under foreclosure are before the court and must be protected as much as those of the owner of the property. (Livingston v. Mildrum, 19 N.Y. 440, 442; Thomas Mort. [3d ed.] § 1101.) A foreclosure is not terminated until the surplus is distributed in the action. (Mutual Life Ins. Co. v. Bowen, 47 Barb. 618.)" (Davison v MacDonald, 124 Misc 726, 728 [Sup Ct, Kings County], affd 216 App Div 759).
Surplus money from a foreclosure sale is not a general asset of the owner of the equity of redemption, but stands in the place of the property for the purpose of distribution among those having vested interests in or liens on the property (see First Fed. Sav. & Loan Assn. of Rochester v Brown, 78 AD2d 119, 123; Roosevelt Sav. Bank v Goldberg, 118 Misc 2d 220, 221 [Sup Ct, Nassau County]). The rights of the parties are fixed at the time of the foreclosure sale, and the rights of a second lienholder are transferred to any surplus (see Elsworth v Woolsey, 154 NY 748, affg 19 App Div 385; Fliess v Buckley, 90 NY 286; Sadow v Poskin Realty Corp., 63 Misc 2d at 502-503).
In this case, HPD was a defendant in the tax lien foreclosure action, and this surplus money proceeding occurred in the context of that tax lien foreclosure action, with the same caption and index number. All of the parties to the foreclosure action were on notice of HPD's appearance in the foreclosure action. As a party to the foreclosure action, HPD was not required to file a notice of claim to the surplus money in order to preserve its right to satisfaction of its lien from the surplus (see Federal Home Loan Mtge. Corp. v Grant, 224 AD2d 656 [holding that as a party to foreclosure action, a secondary mortgagee was not required to file a notice of claim to surplus moneys in order to preserve its right to satisfaction of its lien from surplus proceeds of foreclosure sale, citing RPAPL 1361(2)]).
We disagree with Stell's contention, implicitly accepted by the referee, that for HPD to preserve its rights, notwithstanding its participation in the tax lien foreclosure action, it had to commence a separate action to foreclose its mortgage. Such an approach would necessitate duplication of proceedings, with attendant expense to the parties and burden to the judiciary. The [*4]Court of Appeals long ago held that a duplicative action is neither necessary nor appropriate. In Fliess v Buckley (90 NY 286), the Court stated that, upon the foreclosure of the first mortgage, the lien of the second mortgage followed the surplus into the hands of the county's financial officer, and the remedy of the second mortgagee is to enforce his or her claim in the court by whose direction the foreclosure had taken place; the second mortgagee, said the Court, "requires no other action" (id. at 291). Similarly, we held in Reliance Fed. Sav. & Loan Assn. of N.Y. v Venet Homes (57 AD2d 830) that the holders of mechanic's liens, who had been made party defendants in a mortgage foreclosure action, were not required to commence their own foreclosure actions or serve cross complaints in the mortgage foreclosure action in order to participate in a surplus money proceeding (see Dime Sav. Bank of N.Y. v Boklan, 1989 WL 35946, 1989 US Dist LEXIS 3794 [ED NY, No. CV 86-2664]).
Allerwan Co. v Hermann (262 NY 625) does not undercut or call into question any of these articulated legal principles. It stands only for the proposition that the filing of a claim to surplus money is not the equivalent of the commencement of a foreclosure action. There is no indication either in the Court of Appeals' decision in Allerwan or in our own which preceded it (Allerwan Co. v Hermann, 237 App Div 900) that the holder of the junior mortgage had appeared in the action to foreclose the first mortgage. Similarly, in Greenpoint Sav. Bank v Kijik (297 AD2d 359), while the first mortgagee named the second mortgagee as a defendant in the action to foreclose the first mortgage, the second mortgagee did not appear or answer. Thus, Allerwan and Greenpoint hold only that a junior mortgagee's entitlement to surplus monies generated by a sale incident to foreclosure of a priority lien is not preserved by the filing of a claim to the surplus money where the holder of the junior lien did not participate in the proceeding to foreclose the priority lien (see Bennardo v Del Monte Caterers, Inc., 27 AD3d 503).
In this regard, we find persuasive the reasoning of Judge Raymond Dearie in Dime Sav. Bank of N.Y. v Boklan (1989 WL 35946, 1989 US Dist LEXIS 3794). In that case, Dime Savings Bank, as the holder of the first mortgage, moved to foreclose upon it and named Bankers Trust Company (hereinafter Bankers Trust), the second mortgagee, as a defendant in that action. Bankers Trust appeared in the action, waiving notice of all papers, except notice of surplus money proceedings. A judgment creditor with a claim to the surplus funds contended that Bankers Trust was obligated to commence its own foreclosure proceeding within six years of the declaration of default on its mortgage, and that its failure to do so barred it from seeking the surplus. The District Court held as follows, in relevant part:
"As a junior mortgagee, Bankers Trust was a necessary party-defendant in the foreclosure of Dime Savings' senior mortgage. See N.Y.R.P.A.P.L. § 1311 (McKinney 1979). See generally G. Osborne, Handbook on the Law of Mortgages § 321, at 671 (1970) (junior mortgagees, as parties who have interests subject to a senior mortgage, are necessary defendants in foreclosure of senior mortgage). Under New York law, the lien of a junior mortgagee who is made a party to a foreclosure action brought by a senior mortgagee, although cut-off and extinguished as to the land, continues as a lien upon the surplus funds arising from the foreclosure. See 15 Carmody-Wait 2d Cyclopedia of New York Practice, Foreclosure of Mortgages on Real Estate § 92:431, at 383 (1967) ( notwithstanding the foreclosure of a prior mortgage, the junior mortgage continues to be a lien, and as such, follows the surplus money').
"As Bankers Trust correctly notes, since it was joined in Dime Savings' earlier foreclosure action, its remedy with respect to its mortgage was to look to the surplus monies. Thus, Bankers Trust was not required to commence a separate action. See Fliess v. Buckley, 90 N.Y. 286 (1882) (upholding dismissal of second mortgagee's independent action on ground that its mortgage followed the surplus monies generated from foreclosure of senior mortgage). Cf. Reliance Federal Savings & Loan Ass'n v. Venet Homes, Inc., 57 A.D.2d 830, 394 N.Y.S.2d 61 (2d Dep't 1977) (time limits of Lien Law and C.P.L.R. inapplicable to mechanics liens asserted in surplus money proceedings where liens were valid at time of commencement [*5]of foreclosure action).
. . .
"Requiring Bankers Trust to commence a separate action would not make sense and would not advance any of the interests that statutes of limitation serve to protect. Statutes of limitation are intended primarily to provide fairness to a defendant; that is, a defendant should " be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim where the "evidence has been lost, memories have faded, and witnesses have disappeared."'"' Duffy v. Horton Memorial Hospital, 66 N.Y.2d 473, 476, 497 N.Y.S.2d 890, 892-93, 488 N.E.2d 820, 822 (1985) (quoting Flanagan v. Mount Eden Gen. Hosp., 24 N.Y.2d 427, 429, 301 N.Y.S.2d 23, 25, 248 N.E.2d 871, 872 (1969) (quoting Developments in the Law: Statutes of Limitations,' 63 Harv. L. Rev. 1177, 1185 (1950))). Here there can be no doubt that the participation of Bankers Trust in the foreclosure action put everyone with an interest in a potential surplus on notice that Bankers Trust, too, had a potential interest in the surplus. Thus, the commencement of a separate action would have served no additional purpose." (Dime Sav. Bank of N.Y. v Boklan, 1989 WL 35946, *3-4, 1989 US Dist LEXIS 3794, *7-11).
Here, too, HPD's appearance in the tax lien foreclosure action put Stell and anyone else interested in a potential surplus on notice of HPD's claims. To require HPD to commence a separate foreclosure action, when an action to foreclose the tax lien was already pending, would serve no useful purpose.
Conclusion
Accordingly, we disagree with the referee's conclusion that HPD's claim to the surplus was barred by the statute of limitations. We thus agree with the Supreme Court's determination denying Stell's motion to confirm the referee's report and direct the distribution of surplus funds to him, and directing the New York State Comptroller to distribute the surplus funds to HPD. Therefore, the order should be affirmed insofar as appealed from.
MASTRO, LEVENTHAL and MALTESE, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs.
ENTER:
Aprilanne Agostino
Clerk of the Court